## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| JOHN NASHEL and TIM ROBINSON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:22-cv-10633-SJM-DRG |
| vs. | ) ) | Hon. Stephen J. Murphy III |
| THE NEW YORK TIMES COMPANY, | ) ) ) | |
| Defendant. | ) | |

## DEFENDANT THE NEW YORK TIMES COMPANY'S
## MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Defendant The New York Times Company ("The Times") respectfully moves this Court to dismiss Plaintiffs' Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) because: (1) Plaintiffs fail to state a claim; and (2) their claims are time-barred. Pursuant to Local Rule 7.1(a), Defendant's counsel certifies that on July 25, 2022, they communicated in writing to Plaintiffs' counsel, explaining the nature of the relief sought in this Motion, and seeking concurrence in that relief. Plaintiffs' counsel stated that Plaintiffs would oppose this Motion.

Dated: July 26, 2022

Respectfully submitted,

/s/ *Kristen C. Rodriguez*
DENTONS US LLP
Natalie J. Spears
Kristen C. Rodriguez

Emily A. Golding
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606-6404
Tel: (312) 876-8000
natalie.spears@dentons.com
kristen.rodriguez@dentons.com
emily.golding@dentons.com

CLARK HILL PLC
Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
151 South Old Woodward Avenue,
Suite 200
Birmingham, MI 48009
Tel: (248) 530-6336
pkupelian@clarkhill.com
cschley@clarkhill.com

*Counsel for Defendant*,
*The New York Times Company*

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

JOHN NASHEL and TIM ROBINSON,            )
individually and on behalf of all others )
similarly situated,                      )
               Plaintiffs,  )   Case No. 2:22-cv-10633
                       )
vs.                                      )   Hon. Stephen J. Murphy III
                       )
THE NEW YORK TIMES COMPANY,              )
                       )
                       )
              Defendant.  )

## BRIEF IN SUPPORT OF DEFENDANT THE NEW YORK
## TIMES COMPANY'S MOTION TO DISMISS
## <u>PLAINTIFFS' AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................ ii

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF ISSUES PRESENTED.............................................. viii

STATEMENT OF CONTROLLING/MOST APPROPRIATE
AUTHORITY ........................................................................................ viiii

INTRODUCTION ................................................................................... 1

STATEMENT OF FACTS ....................................................................... 3

I.      The Michigan PPPA Protects Against the Invasion of Privacy. .................... 3

II.     Plaintiffs Make Conclusory Allegations of PPPA Violations........................ 5

ARGUMENT .......................................................................................... 7

I.      Plaintiffs' Amended Complaint Fails to State a Claim Under the
        PPPA. ........................................................................................ 7

II.     Plaintiffs' Claims Are Time Barred. ......................................... 12

        A.      The Nature and Origin of the PPPA Is The Traditional Common Law
                Right to Privacy, Making the Three-Year Limitations
                Period Applicable. ................................................. 13

        B.      The Three-Year Limitations Period Applies Because Plaintiffs
                Expressly Seek to Recover for Personal Injuries. .............................. 17

        C.      Recent PPPA Decisions on the Limitations Issue Do Not
                Control. ............................................................. 18

        D.      The Supreme Court of Michigan Has Yet to Rule on the Applicable
                Statute of Limitations in PPPA Cases. .................................. 23

III.    Dismissal with Prejudice is Warranted........................................ 23

CONCLUSION ..................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arent v. Hatch*,
349 N.W.2d 536 (Mich. Ct. App. 1984) ............................................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................7

*Aslani v. Sparrow Health Systems*,
No. 1:08-CV-298, 2009 WL 736654 (W.D. Mich. Mar. 12, 2009) .............21, 22

*Asset Management One LLC v. U.S. Bank National Association*,
569 F. App'x 438 (6th Cir. 2014) ......................................................................24

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................7, 12

*Bishop v. Lucent Technologies, Inc.*,
520 F.3d 516 (6th Cir. 2008) ...............................................................................7

*Boelter v. Advance Magazine Publishers Inc.*,
210 F. Supp. 3d 579 (S.D.N.Y. 2016) ...............................................................13

*Boelter v. Hearst Communications, Inc.*,
269 F. Supp. 3d 172 (S.D.N.Y. 2017) ...............................................................16

*Coulter-Owens v. Time Inc.*,
695 Fed. App'x 117 (6th Cir. 2017) ...............................................................5, 14

*Dabish v. McMahon*,
818 F. App'x 423 (6th Cir. 2020) .................................................................21, 22

*In re Darvocet, Darvon, & Propoxyphene Products Liabilty Litigation*,
756 F.3d 917 (6th Cir. 2014) .............................................................................21

*Derderian v. Genesys Health Care Systems*,
689 N.W.2d 145 (Mich. Ct. App. 2004) ............................................................16

*DiPonio Construction Co. v. Rosati Masonry Co.*,
    631 N.W.2d 59 (Mich. Ct. App. 2001) ...............................................................19

*DM Research, Inc. v. College of American Pathologists* ,
    170 F.3d 53 (1st Cir. 1999) ...............................................................................12

*Edwards v. Hearst Communications, Inc.*,
    No. 15-cv-9279, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016) ..........................16

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) .............................................................................14

*Fisher v. Perron*,
    30 F.4th 289 (6th Cir. 2022) ........................................................................11, 12

*Frame v. Nehls*,
    550 N.W.2d 739 (Mich. 1996) ...........................................................................18

*Garden City Osteopathic Hospital v. HBE Corp.*,
    55 F.3d 1126 (6th Cir. 1995) .............................................................................13

*Green v. Lansing Automakers Fed. Credit Union*,
    No. 342373, 2019 WL 3812108 (Mich. Ct. App. Aug. 13, 2019) ...............15, 16

*Hall v. Farm Journal, Inc.*,
    No. 2:21-cv-11811 (E.D. Mich. April 5, 2022) ...........................................*passim*

*Hearn v. Rickenbacker*,
    400 N.W.2d 90 (Mich. 1987) .............................................................................13

*Krassick v. Archaeological Institute of America*,
    No. 2:21-CV-180, 2022 WL 2071730 (W.D. Mich. June 9, 2022)............*passim*

*League of United Latin American Citizens v. Bredesen*,
    500 F.3d 523 (6th Cir. 2007) ...............................................................................7

*Lin v. Crain Communications Inc.*,
    No. 19-11889, 2020 WL 248445 (E.D. Mich. Jan. 16, 2020).......................14, 15

*Markham v. National Geographic Partners, LLC*,
    No. 1:19-cv-00232 (W.D. Mich.), ECF 26........................................................16

iv

*Marks v. Hulstrom*,
No. 294453, 2010 WL 2134303 (Mich. Ct. App. May 27, 2010).....................21

*McCree v. Continental Management, LLC*,
No. 351171, 2021 WL 1050115 (Mich. Ct. App. Mar. 18, 2021).....................21

*Michigan Employment Security Commission v. Westphal*,
542 N.W.2d 360 (Mich. Ct. App. 1995)............................................................18

*Moeller v. American Media, Inc*.,
235 F. Supp. 3d 868 (E.D. Mich. 2017) .....................................................13, 14

*Ott v. Midland-Ross Corp*.,
523 F.2d 1367 (6th Cir. 1975) ...........................................................................12

*Palmer Park Square, LLC v. Scottsdale Insurance Co.*,
878 F.3d 530 (6th Cir. 2017) .......................................................................*passim*

*Perlin v. Time Inc*.,
237 F. Supp. 3d 623 (E.D. Mich. 2017) ............................................................13

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) .........................................................................14

*Pratt v. KSE Sportsman Media, Inc.*,
No. 1:21-CV-11404, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022) .........*passim*

*Rentola v. Dow Jones & Co., Inc*.,
No. 4:20-cv-11589 (E.D. Mich.) ......................................................................16

*Wheaton v. Apple Inc.*,
No. C 19-02883 WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25,
2019) ..............................................................................................................9, 10

**Statutes**

1988 Mich. Pub. Act No. 378 .................................................................3, 15, 19

M.C.L. § 445.1711, *et seq*...............................................................................*passim*

MCL § 600.5805 ............................................................................................*passim*

MCL § 600.5813 ................................................................................17, 18, 19, 20

S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92............................................................4

## STATEMENT OF ISSUES PRESENTED

1. Whether Plaintiffs' claims under the Michigan Preservation of Personal Privacy Act ("PPPA") should be dismissed because Plaintiffs fail to plausibly allege that Defendant unlawfully disclosed their information in violation of the PPPA.

Defendant's Answer: YES.

2. Whether Plaintiffs' claims under the Michigan PPPA are time-barred by the three-year statute of limitations in M.C.L. § 600.5805(2), which is the limitations period traditionally recognized under common law for the invasion of privacy claims alleged here.

Defendant's Answer: YES.

## STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY

The controlling authority for this Motion includes:

1. Federal Rule of Civil Procedure 12(b)(6) .

2. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

3. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

4. MCL § 600.5805(2).

5. *Fisher v. Perron*, 30 F.4th 289 (6th Cir. 2022).

6. *Wheaton v. Apple Inc.*, No. C 19-02883 WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019).

7. *Dabish v. McMahon*, 818 F. App'x 423 (6th Cir. 2020).

8. *Garden City Osteopathic Hospital v. Hbe Corp.*, 55 F.3d 1126 (6th Cir. 1995).

9. *Green v. Lansing Automakers Federal Credit Union*, No. 342373, 2019 WL 3812108 (Mich. Ct. App. Aug. 13, 2019).

# INTRODUCTION

Plaintiffs contend that Defendant The New York Times Company ("The Times") wrongfully disclosed their "Private Reading Information" during a period of just under four months in 2016, in purported violation of Michigan's Preservation of Personal Privacy Act, M.C.L. § 445.1711, *et seq.* (the "PPPA") (also known colloquially as the "Video Rental Privacy Act").  Their initial Complaint, filed in March 2022, consisted solely of threadbare and conclusory allegations about purported disclosures made by The Times.  Accordingly, the Times moved to dismiss the initial Complaint for, among other things, failure to state a claim.  In response, Plaintiffs—apparently marshaling all the facts they could gather about The Times's alleged disclosures of subscriber information—filed the Amended Complaint.

Plaintiffs' second effort fares no better than their first.  Subject to various exceptions, the PPPA prohibits disclosures of "information concerning the purchase" of written materials by a customer "that indicates the identity of a customer."  M.C.L. § 445.1712 (1989).  The Amended Complaint contains no allegations about the actual disclosure of any customer's (let alone, Plaintiffs') information:  not which customers' information was supposedly disclosed or to whom, or when that disclosure purportedly occurred.  Instead, all Plaintiffs are able to muster are generalized allegations about irrelevant facts that fall well outside the

narrow time period relevant to this case.  Despite Plaintiffs' best efforts, none of the allegations in the Amended Complaint, standing alone or taken together, create a plausible inference that The Times wrongfully disclosed anyone's "Private Reading Information"—let alone Plaintiffs' own information—during the relevant timeframe.  This pleading deficiency warrants dismissal on its own.

Plaintiffs' pleading deficiencies are hardly surprising.  Under the pressure of what they believed to be a ticking clock, Plaintiffs filed the scattershot allegations against The Times in an attempt to preserve a claim to statutory damages that, under Plaintiffs' (incorrect) view, is about to expire on July 31, 2022.  Notably, this case is part of a deluge of PPPA class action lawsuits recently filed by the same Plaintiffs' counsel as here, all attempting to claim statutory damages for purported violations of the pre-July 31, 2016 version of the PPPA, which included a $5,000 statutory penalty that the Michigan legislature has since removed.

In reality, however, any claim for statutory damages under the PPPA has long expired.  Although the PPPA does not contain an express statute of limitations, Michigan law makes clear that claims grounded in common law torts and personal injury, like those under the PPPA, are subject to a three-year limitations period—not the six-year "catch-all" period asserted by Plaintiffs.  Therefore, any claim under the pre-July 31, 2016 version of the PPPA expired on July 30, 2019.  As a result, even

if this Court were to find Plaintiffs' bald allegations sufficient to state a claim, Plaintiffs' claims were filed three years too late and must be dismissed.

Importantly, this is Plaintiffs' second attempt to bring a viable action, and they have failed. They should not be permitted to amend these untimely and meritless claims again. The Times respectfully requests that this Court dismiss the Amended Complaint with prejudice.

## STATEMENT OF FACTS

### I.     The Michigan PPPA Protects Against the Invasion of Privacy.

There can be no doubt that the PPPA was designed to protect the right to privacy. The Michigan state legislature passed the PPPA in 1988 to address concerns related it described as an "unwarranted invasion of privacy." *Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section, H.B. No. 5331, Jan. 20, 1989 (attached to Amended Complaint as Ex. E, ECF 16-6, PageID.765); *see also* 1988 Mich. Pub. Act No. 378 (PPPA is "[a]n act to *preserve personal privacy* with respect to the purchase, rental, or borrowing of certain materials; and to provide penalties and remedies for violation of this act") (emphasis added).

The PPPA was passed in the wake of a federal statute, the "Video Privacy Protection Act," which was enacted following the disclosure of Supreme Court nominee Judge Robert Bork's video rental choices in a newspaper. *See* Am. Compl. Ex. E, ECF 16-6 at PageID.765. However, Michigan's law went further than the

federal Act.  In addition to video rental records, its scope includes "books or other written materials," proscribing certain "disclosures" of records or information "concerning the purchase, lease, rental, or borrowing of those materials."  M.C.L. § 445.1712 (1989).

The Michigan statute sat on the books largely uninvoked for nearly 30 years until plaintiffs' counsel started bringing a series of class actions against magazine publishers over "direct marketing" mailing practices.  The allure of class actions under the PPPA was a statutory damages provision that permitted an action for actual damages *or* $5,000 in statutory damages, whichever was greater.  M.C.L. § 445.1715 (1989).  Not surprisingly, the prior PPPA class action suits (filed against publishers by the same Plaintiffs' lawyers here, in or around 2015) elected to pursue the statutory damages of $5,000 per subscriber in lieu of seeking actual damages, threatening *in terrorem* class action damages.

In the wake of these potentially crippling class action lawsuits, the Michigan Legislature amended the PPPA in 2016 (the "2016 Amendment").[1]  Among other things, the 2016 Amendment expressly removed the provision for $5,000 statutory damages, and in its place, provided only for actual damages.  *See* MCL §

---

[1] S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (codified at M.C.L. § 445.1711, *et seq.* (2016)).

445.1715(2).  The 2016 Amendment took effect July 31, 2016.  Thus, July 30, 2016, was the last day the $5,000 statutory damages provision was in place.[2]

## II.      Plaintiffs Make Conclusory Allegations of PPPA Violations.

Plaintiffs John Nashel and Tim Robinson filed this action on March 24, 2022, and, in a tacit admission that their initial Complaint was inadequate, amended that Complaint on June 28, 2022, after The Times moved to dismiss it for failure to state a claim.[3]

In the Amended Complaint, Plaintiffs—alleged subscribers to *The New York Times*—baldly and broadly allege that The Times "rented, exchanged, and/or otherwise disclosed detailed information" about their "Private Reading Information" ("PRI")—*i.e.*, their names, home addresses, and the "titles of publications subscribed to"—to third parties without consent or notice, and that such disclosures violated the PPPA.  Am. Compl. at ¶¶ 1, 11.

Plaintiffs have added verbiage to the Amended Complaint, alleging that: (1) a "list broker" called Nextmark, Inc. "offered to provide renters access to the mailing list titled 'The New York Times Mailing List,'" which purportedly contained the

---

[2] The Sixth Circuit ruled that the 2016 Amendment applies only prospectively. *Coulter-Owens v. Time Inc.*, 695 Fed. App'x 117, 121 (6th Cir. 2017).

[3] There are at least 41 other cases currently pending in Michigan federal courts, all filed by the same lead plaintiffs' lawyers as here, who also filed two earlier rounds of PPPA lawsuits against publishers.  The latest wave of lawsuits began last year, as the purported six-year limitations period for pre-2016 Amendment claims was about to run out.

PRI of the Times's "subscribers," in a data card published online in 2007 (*id.* at ¶ 3); (2) another "list broker" called Direct Magazine "offered to provide renters access to the mailing list titled 'The New York Times Enhanced Database'" in 2008, which purportedly contained the PRI of the Times's "subscribers" (*id.* at ¶ 4); (3) in 2020, "a publication titled 'Direct Digital Data Drive Marketing 5th Edition' was released that featured a 'case study' on the marketing strategies employed by Virginia Beach, Virginia," which indicated that Virginia Beach had "rented" the Times's "subscriber list" at some unknown point in time (*id.* at ¶ 7); and (4) at some point in 2015 and/or 2016, The Times had a privacy policy in place that notified its customers that The Times "may exchange or rent" certain subscriber information with "reputable companies that offer marketing information or products through direct mail" (*id.* at ¶ 6 and Am. Compl. Exhibit D, ECF 16-5).

Missing from the Amended Complaint are any allegations that The Times disclosed Plaintiffs' (or anyone else's) names and addresses to unknown and unnamed third parties, especially not during the relevant pre-July 31, 2016 timeframe, which Plaintiffs contend is March 24, 2016 to July 30, 2016. *Id.* at ¶ 2.

Plaintiffs seek to represent a class of all Michigan residents who allegedly had their PRI disclosed to third parties by The Times without their consent during the relevant time period. *See id.* at ¶ 58. Plaintiffs explicitly bring their claims under

the prior version of the PPPA in order to seek $5,000 in statutory damages per subscriber. *See id.* at ¶¶ 1, n.2.

## ARGUMENT

## I.    Plaintiffs' Amended Complaint Fails to State a Claim Under the PPPA.

Plaintiffs' Amended Complaint is devoid of any actual facts supporting their allegations that The Times unlawfully disclosed anyone's, much less their own, private information in violation of the PPPA during the relevant time period. To survive a motion to dismiss, Plaintiffs must allege facially plausible *facts* supporting their claims that The Times is liable under the PPPA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Importantly, "a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (emphasis in original).

To plead a claim under the PPPA, a plaintiff must allege facts that, if proved, would show both that (i) the defendant disclosed the relevant information about the plaintiff without the plaintiff's consent, and (ii) the information specifically identified the plaintiff to the party receiving that information.  M.C.L. § 445.1712 (1989) (prohibiting disclosure "to any person, other than the customer, a record or information concerning the purchase . . . of [written] materials by a customer that indicates the identity of the customer").  Under Plaintiffs' own formulation of these statutory requisites, Plaintiffs must plead plausible facts demonstrating that, during the relevant time period, The Times unlawfully disclosed their PRI—their full name, title of publication subscribed to, and home address—to third parties.  *See* Am. Compl. at ¶ 11.

Even with a second chance to plead their claims, Plaintiffs allege nothing in the Amended Complaint about any wrongful disclosures relating to any subscriber, much less an actionable disclosure, during the relevant time period.  Rather, Plaintiffs string together a hodgepodge of irrelevant facts in hopes that this Court will infer a wrongful disclosure sufficient to survive a motion under Rule 12(b)(6).  Specifically, Plaintiffs allege that roughly eight to nine years prior to the relevant time period, third parties (*i.e.*, not The Times) published "data cards" relating to The Times on their own third-party websites in 2007 and 2008.  According to Plaintiffs,

these "data cards" apparently claim to offer a mailing list of The Times's subscribers for rental. *Id.* at ¶¶ 4-6.

These allegations fail to create a plausible inference that The Times disclosed protected PRI to those third parties during the relevant time period. As an initial matter, the 2007 and 2008 "data cards" do not even indicate what type of information is included with the mailing list at all, let alone that the mailing list contains PRI for Michigan subscribers, including Plaintiffs. Nor do they demonstrate that such mailing lists were available during the relevant time period—over eight years *after* the date on the data cards. Indeed, even Plaintiffs admit that these data cards ceased being published in or around 2008. *Id.* at ¶ 6. Further, the Amended Complaint's reliance on information provided by third-party data brokers fails to support Plaintiffs' assertion that The Times *itself* was the one "renting, exchanging, or otherwise disclosing" PRI.

Other courts have recognized that these kinds of factual assertions are insufficient at the 12(b)(6) stage. In another action alleging claims under the Michigan PPPA brought by the same Plaintiffs' lawyers as here, the court dismissed a similar complaint against Apple for failure to plead a PPPA claim when the plaintiffs there attempted to rely on similar screenshots of third party "data cards" appearing on third party data broker websites. *See Wheaton v. Apple Inc.*, No. C 19-02883 WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019), attached hereto as

Exhibit 1.   Just as in the Amended Complaint against The Times, the *Wheaton* plaintiffs claimed that Apple "rents, transmits, or otherwise discloses" its customers' private information "to data aggregators, data miners, data brokers, data appenders, and other third parties, who then supplement that information" and "in turn" disclosed it "to other third parties" resulting in "a barrage of unwanted junk mail. . ." *Compare Wheaton v. Apple Inc.*, No. C 19-02883 WHA (N.D. Cal.), Compl. ECF 1, attached hereto as Exhibit 2, ¶¶ 3, 6, 47 *with* Am. Compl. ¶¶ 1, 2.

The *Wheaton* court dismissed the plaintiffs' PPPA claim all the same, finding that the "data card" screenshots relied on by the plaintiffs did not actually show that *Apple* "explicitly disclose[d] any names, addresses, or personally identifying information of customers" to third parties."  2019 WL 5536214, at *4.  The same is true here regarding the "data cards" Plaintiffs rely upon in their Amended Complaint: they do not show that The Times "explicitly disclosed" any subscribers' PRI, much less the named Plaintiffs' PRI, to anyone, at any point in time, and certainly not eight years past the data cards' date of publication.

Plaintiffs also cite to a 2020 book containing a marketing case study, which indicates (without any support) that the City of Virginia Beach (at some unknown time) obtained a list of e-mail addresses of The Times's subscribers.  Like the "data card" allegations, this allegation fails to plausibly allege that The Times itself ever wrongfully disclosed any information to anyone—it merely alleges that the City of

Virginia Beach *at some point* had a list of The Times's subscribers' e-mail addresses. Again, it is too great an inferential leap to view this case study as supporting an allegation that The Times *itself* wrongfully disclosed *Michigan* subscriber information to the City of Virginia Beach *during the relevant time period*. Moreover, disclosure of lists of e-mail addresses is not even the subject of Plaintiffs' Amended Complaint.  *Id.* at ¶ 11 (alleging that the wrongfully disclosed information at issue here is limited to subscribers' full names, publication title to which they subscribed, and *home* addresses).

Finally, Plaintiffs resort to citing a Times privacy policy dated June 10, 2015, in an effort to show that The Times was disclosing subscriber information during the relevant period in 2016.  *Id.* at ¶ 6.  As with the other new allegations, this one, too, falls short.  It is one thing to point to a general disclaimer in a privacy policy—one that applies to subscribers anywhere in the world—that The Times "may" disclose certain information at some point in time; it is quite another to plausibly allege that The Times violated Michigan law and *actually* engaged in disclosures that included Plaintiffs' information (or even the information of any Michigan subscribers) during a four-month period in 2016.

Federal courts routinely dismiss bald privacy claims like Plaintiffs' claims here.  For example, in *Fisher v. Perron*, 30 F.4th 289 (6th Cir. 2022), the Sixth Circuit affirmed dismissal of a claim for public disclosure of private facts where the

plaintiff made only conclusory allegations. The Sixth Circuit held that those bare allegations did "not allege when these disclosures occurred, who the [information was disclosed to], or whether [the disclosure] contained private information." *Id.* at 297. *Id.* The instant case suffers from this same defect—the specifics of the "when," and the "to whom" simply are not pled whatsoever as any subscribers, much less about the named Plaintiffs themselves.

After two attempts, Plaintiffs have not and cannot cross the "line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557 (quoting *DM Rsch., Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)).  Their claims must be dismissed with prejudice.

## II.      Plaintiffs' Claims Are Time Barred.

Plaintiffs' claims also should be dismissed under Rule 12(b)(6) because they are untimely. *See Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir. 1975) ("[A] complaint can be dismissed as barred by the applicable statute of limitations under Rule 12(b)(6) when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief.").  Because Plaintiffs' claims are for personal injuries resulting from an invasion of privacy, their claims are subject to the three-year statute of limitations in MCL § 600.5805(2), not the six-year period that Plaintiffs wrongly assert is applicable to all statutory claims that lack express limitations periods.

A.   **The Nature and Origin of the PPPA Is The Traditional Common Law Right to Privacy, Making the Three-Year Limitations Period Applicable.**

To determine the limitations period for a statutory claim that does not specify an express limitations period, courts look as the "nature and origin" of a claim to determine its limitations period.  *See Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1132-33 (6th Cir. 1995); *Palmer Park Square, LLC v. Scottsdale Ins. Co.*, 878 F.3d 530, 534 (6th Cir. 2017) (in determining the appropriate limitations period for a statutory claim, the Sixth Circuit—quoting the Michigan Supreme Court—has held that "a court should focus on the '*nature of the right sued upon'* rather than 'the *form of [the] action* or the relief demanded.'") (quoting *Hearn v. Rickenbacker*, 400 N.W.2d 90, 92 (Mich. 1987)) (emphasis added).

Numerous courts have determined that the PPPA finds its origins in and is, by nature, a common law tort of invasion of privacy in the context of reading materials. *See Moeller v. Am. Media, Inc*., 235 F. Supp. 3d 868, 873 (E.D. Mich. 2017) ("Subscribers' right to privacy in their personal-reading information is grounded in an interest '*traditionally regarded as providing a basis for a lawsuit* in English or American courts.'") (citation omitted; emphasis added); *Perlin v. Time Inc*., 237 F. Supp. 3d 623, 641 (E.D. Mich. 2017) ("[T]he right guaranteed by the [PPPA] is *similar in kind to other privacy rights that were gradually recognized by American courts* over the course of the last century . . .") (emphasis added); *Boelter v. Advance*

*Mag. Publishers Inc*., 210 F. Supp. 3d 579, 590 (S.D.N.Y. 2016) (explaining that "the harms contemplated by [the PPPA and its federal analogue] *have close ties to those recognized by the common law tort of invasion of privacy*") (emphasis added).

The Amended Complaint itself recognizes that Michigan's PPPA has the same goals as the federal Video Privacy Protection Act ("VPPA"), which spawned the passage of the PPPA.  *See* Am. Compl. ¶ 26.  And several courts have held that the VPPA, like Michigan's PPPA, finds its origins in, and codifies, a common law right to privacy in a specific context.  *See, e.g.*, *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (VPPA "codifies a context-specific extension of the *substantive* right to privacy") (emphasis in original); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340-41 (11th Cir. 2017) (VPPA "has a close relationship to a harm that has traditionally been regarded as providing a basis for lawsuit in English or American courts").

A claim for violation of the PPPA is therefore a claim for redress of an invasion of privacy, which is a common law claim that traditionally sounds in tort.  *See, e.g.*, *Coulter-Owens*, 695 F. App'x at 119 (noting that plaintiff claimed "an invasion of privacy in violation of [the PPPA]"); *Moeller*, 235 F. Supp. 3d at 873 (violations of the PPPA are "invasion[s] of plaintiffs' privacy"); *Lin v. Crain Commc'ns Inc.*, No. 19-11889, 2020 WL 248445, at *5 (E.D. Mich. Jan. 16, 2020) (noting that the PPPA addressed "invasion[s] of a legally protected privacy

interest"); *Halaburda,* 2013 WL 12246914, at \*1 (stating that the PPPA is "a privacy right"). Indeed, the very title of the statute, the Preservation of Personal Privacy, along with the Michigan legislature's stated intention in creating the statute—"to *preserve personal privacy*" (1988 Mich. Pub. Act No. 378 (emphasis added)), rather than to create a brand new injury subject to redress—supports this conclusion.

Notably, Plaintiffs' allegations mirror exactly the allegations necessary to assert a common law claim for invasion of privacy under Michigan law. *Compare, Green v. Lansing Automakers Fed. Credit Union*, No. 342373, 2019 WL 3812108, at \*5 (Mich. Ct. App. Aug. 13, 2019) (stating that the elements of an invasion of privacy claim in Michigan are "(1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable man.") (citation omitted) *with* Am. Compl. ¶¶ 27, 28, 39, 46, 47, 49-57 (detailing how consumers' data is private and sensitive), ¶¶ 1-3, 6, 8, 9-14, 51-57, 61, 69-72, 76-82 (detailing how the PPPA affords consumers a right to privacy of their PRI); and ¶¶ 17, 55, 77 (alleging the wrongful conduct on the part of The Times in obtaining and transmitting consumers' PRI "without consent" or "without notice").

M.C.L. § 600.5805(2) provides: "the period of limitations is 3 years after the time of the death or injury for *all actions to recover damages* for the death of a

person or *for injury to a person* or property" (emphasis added).  Michigan courts consistently apply Section 600.5805(2)'s three-year statute of limitations to common law privacy-based claims.  *See, e.g., Green*, 2019 WL 3812108, at *5 (three-year limitation period applied to invasion of privacy, unlawful intrusion claim); *Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 159-60 (Mich. Ct. App. 2004) (three-year limitations period applied to invasion of privacy, false-light claim); *Arent v. Hatch*, 349 N.W.2d 536, 539 (Mich. Ct. App. 1984) (three-year limitations period applied to invasion of privacy claim).

In fact, other federal courts outside of this District have applied Section 600.5805(2)'s three-year limitations period to PPPA claims.  *See Edwards v. Hearst Communications, Inc.*, No. 15-cv-9279, 2016 WL 6651563, at *1 (S.D.N.Y. Nov. 9, 2016); *Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172, 187 (S.D.N.Y. 2017).  Notably, even Plaintiffs' counsel here took the position in prior PPPA suits that the PPPA was subject to a three-year statute of limitations pursuant to M.C.L. § 600.5805(2).[4]

---

[4] *See Markham v. National Geographic Partners, LLC*, No. 1:19-cv-00232, (W.D. Mich.), ECF 26 (arguing for tolling of the three-year limitations period); *Rentola v. Dow Jones & Co., Inc*., No. 4:20-cv-11589 (E.D. Mich.), ECF 12 at PageID.196 ("Claims under the [VRPA] are subject to a 'three year statute of limitations'.") ; *Boelter v. Hearst*, Plaintiffs' Memo., 2017 WL 4838016 (section heading supporting tolling of a *three-year statute of limitations*: "HEARST'S ARGUMENT THAT THERE IS NO BASIS TO TOLL THE THREE-YEAR STATUTE OF LIMITATIONS IS WRONG").

**B.** **The Three-Year Limitations Period Applies Because Plaintiffs Expressly Seek to Recover for Personal Injuries.**

Despite the overwhelming evidence that the nature and origin of a PPPA claim is that of a common law privacy claim, Plaintiffs will nonetheless argue that a PPPA claim should be subject to the catch-all six-year limitations period in M.C.L. § 600.5813 because the PPPA does not contain an express limitations period. *See* Am. Compl. at ¶ 1, n.1. Section 600.5813 provides: "All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."

Even if this Court were to find that a claim under the PPPA is not the same as a common law privacy claim, a PPPA claim is nonetheless one for personal injury, which is subject to a three-year statute of limitations. The statutory language itself confirms the personal injury nature of an PPPA claim. The PPPA specifically provides that recovery is permitted "for damages *to the customer* identified in the record." M.C.L. § 445.1715 (1989) (emphasis added)). And further, recoverable damages under both the current and pre-Amendment versions of the PPPA specifically include those for "emotional distress," which reflect the Michigan Legislature's acknowledgement of the inherently personal nature of the injury the PPPA is intended to redress.

Michigan law is clear that when two potentially applicable Michigan statutes of limitations are at issue, the more specific statute of limitations should control.

17

*See e.g., Michigan Emp. Sec. Comm'n v. Westphal*, 542 N.W.2d 360, 362 (Mich. Ct. App. 1995) (holding that the application of the more general six-year catch-all statute of limitations when the more specific personal injury statute of limitations is also applicable "would be contrary to both the legislative intent and the judicial rules of construction"); *Frame v. Nehls*, 550 N.W.2d 739, 741, n.3 (Mich. 1996) (when two statutes are potentially applicable, the more specific statute applies). This is precisely the case here: the more specific three-year statute of limitations for personal injury should control, and Plaintiffs' claims are therefore time-barred.

### C.   Recent PPPA Decisions on the Limitations Issue Do Not Control.

Concededly, two judges in this District and one judge in the Western District of Michigan recently found that the "catch all" six-year limitations period under M.C.L. § 600.5813 applies to PPPA claims. *See Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-CV-11404, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022) (Ludington, J.); *Hall v. Farm Journal, Inc.*, No. 2:21-cv-11811, ECF 26 (E.D. Mich. April 5, 2022) (Lawson, J.) ("Slip Op."), attached hereto as Exhibit 3; and *Krassick v. Archaeological Inst. of Am.*, No. 2:21-CV-180, 2022 WL 2071730, at *1 (W.D. Mich. June 9, 2022) (Jarbou, J.). Respectfully, those decisions are incorrect under the governing law for at least three reasons:

***First***, those decisions ignore established Michigan law requiring courts to look to the "nature" and "origin" of a claim when they hold that M.C.L. § 600.5805

does not apply to claims that are brought as statutory claims rather than traditional common law torts.  *See Pratt*, 2022 WL 469075, at *2; *Hall*, Slip. Op. at PageID.716; *Krassick*, 2022 WL 2071730, at *3.  For the reasons outlined above, the PPPA clearly finds its nature and origin in the Michigan common law invasion of privacy tort.  Indeed, the stated purpose of the statute, as also reflected in its title, is to "preserve" the right of privacy found in the common law.  *See* 1988 Mich. Pub. Act No. 378.

**Second**, the decisions are incorrect because they fail to recognize that the PPPA clearly seeks to remedy an injury to a person, therefore *requiring* application of the three-year limitations period for personal injury actions—even if a PPPA claim is not a "codification" of, or the same as, a common law invasion of privacy claim.  Instead of focusing on the personal injury nature of the claim, the recent PPPA statute of limitations decisions turn chiefly on the courts' readings of *Palmer Park*, 878 F.3d 530, in which the Sixth Circuit found that the six-year statute of limitations in M.C.L. § 600.5813 applied to the specific statutory claim in that case. But *Palmer Park* is inapplicable here.[5]

---

[5] The cases also rely on *DiPonio Construction Co. v. Rosati Masonry Co.*, 631 N.W.2d 59 (Mich. Ct. App. 2001).  But any reliance on *DiPonio* here is misplaced because *DiPonio* concerned a claim by a business against another business for unlawful withholding of funds in violation of the Michigan Builder's Trust Fund Act, which has nothing to do with an alleged personal injury, as is the case here.

In *Palmer Park*, the Sixth Circuit dealt with the narrow issue of the limitations period applicable to a statutory claim brought by a business (not a person) for penalty interest on untimely-paid insurance benefits (a cause of action created by the Michigan Insurance Code). The Sixth Circuit was *only* asked to analyze whether the two-year contractual limitations period in the relevant insurance policy or the six-year limitations period in Section 600.5813 was applicable. Because the Sixth Circuit found that the claim for interest could not have been brought but for the statute (and was mentioned nowhere in the policy), it held that the statutory claim was subject to the six-year period found in M.C.L. § 600.5813.[6] 878 F.3d at 540.

*Pratt*, *Hall* and *Krassick* read *Palmer Park* to hold that the six-year statute of limitations always applies to statutory causes of actions unless the relevant statute contains its own, specific statutory limitations period. *Pratt,* 2022 WL 469075, at *12; *Hall*, No. 2:21-cv-11811, Slip. Op. at PageID.714-16; *Krassick*, 2022 WL 2071730, at *3-5. That argument stretches *Palmer Park* too far, especially as the Sixth Circuit was narrowly deciding the limitations period applicable to a claim by a business, and not an allegation of "personal injury."

---

[6] Importantly, no party in *Palmer Park* advocated for the three-year statute of limitations applicable to claims for injury to a person. The Sixth Circuit strictly analyzed whether the policy's two-year limitations period applied or M.C.L. § 600.5813's six-year limitations period applied.

*Finally*, the recent PPPA decisions are also incorrect because their interpretation of *Palmer Park* contradicts decades of Michigan precedent that has applied the three-year limitations in Section 600.5805(2) to statutory claims that allege injury to persons, even when the statute was otherwise silent on a limitations period. *See e.g.*, *Marks v. Hulstrom*, No. 294453, 2010 WL 2134303, at *1 (Mich. Ct. App. May 27, 2010) (applying Section 600.5805(2)'s limitations period to statutory nuisance claim under M.C.L. § 600.2940(1)); *McCree v. Cont'l Mgmt., LLC*, No. 351171, 2021 WL 1050115, at *7 (Mich. Ct. App. Mar. 18, 2021) (holding that the three-year limitations period applies to the Housing Act of Michigan and Truth in Renting Act); *Dabish v. McMahon*, 818 F. App'x 423, 427-29 (6th Cir. 2020) (three-year limitations period applies to claims brought under Michigan's Ethnic Intimidation statute, M.C.L. § 750.147b).

There is no reason to believe that *Palmer Park* intended to adopt a rule that conflicted with Michigan precedent.  Nor could it.  Like all federal courts dealing with a state-law question, it was bound by state precedents.  *See In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 937 (6th Cir. 2014) ("On questions of state law, this Court is bound by the rulings of the state supreme court."); *Aslani v. Sparrow Health Sys.*, No. 1:08-CV-298, 2009 WL 736654, at *7 (W.D. Mich. Mar. 12, 2009) (if certain state statutes "do not provide their own

statutes of limitation, the court 'borrows' the most closely analogous statute of limitations in the State where the events giving rise to the claims occurred").

Moreover, the Sixth Circuit's recent decision in *Dabish v. McMahon*, 818 F. App'x 423, is particularly instructive because it was issued **after** *Palmer Park*, and the Sixth Circuit nonetheless applied M.C.L § 600.5805(2)'s three-year limitations period to an action brought under a Michigan statute that *did not* itself contain a specified limitations period.  If the courts in *Pratt*, *Hall* and *Krassick* were correct in finding that *Palmer Park* stands for the proposition that any Michigan statutory action is subject to the catch-all six-year limitations period if the relevant statute does not contain its own limitations period, then that is tantamount to finding that the Sixth Circuit directly contradicted itself and got it wrong in issuing the *Dabish* decision.  That simply cannot be the case.

The more reasonable interpretation of *Palmer Park* and *Dabish* is that those two decisions are entirely compatible.  In *Palmer Park*, the Sixth Circuit examined the facts and statute before it—a claim by a business (not a person) for violation of a statutory interest provision created by the Michigan Insurance Code—and found that M.C.L. § 600.5815 provided the most closely analogous limitations period for that claim.  *Dabish*, however, looked at a claim under a Michigan statute brought by a *person* (not a business) alleging actual injury to that *person* as a result of a violation of an ethnic intimidation statute.  Thus, in *Dabish*, the most closely analogous

limitations period (like here) was M.C.L. § 600.5805(2)'s three-year period that applies to claims for *injury to a person*.

In sum, there is no question that a claim under the PPPA alleges harm *to a person* and therefore is a personal injury claim. *Pratt*, *Hall* and *Krassick* were wrongly decided based on a misapplication of Michigan law. The three-year statute applies and bars Plaintiffs' claims in their Amended Complaint.

### D. The Supreme Court of Michigan Has Yet to Rule on the Applicable Statute of Limitations in PPPA Cases.

Michigan Court Rule 3.501(A)(5) does not permit plaintiffs to bring class actions for statutory damages in Michigan state court unless the statute explicitly authorizes a class, which the PPPA does not. To circumvent this prohibition, Plaintiffs here seek to invoke federal jurisdiction through the Class Action Fairness Act, 28 U.S.C. § 1332(d). *See* Am. Compl. at ¶ 19. As a practical matter, given that all of the pending PPPA cases have been brought as class actions, a Michigan state court is unlikely to opine on the applicable statute of limitations absent certification of the issue to the Michigan Supreme Court. Accordingly, concurrently with this Motion, The Times is moving to certify the question of whether the three-year statute of limitations applies to the PPPA to the Michigan Supreme Court.

## III. Dismissal with Prejudice is Warranted.

Plaintiffs have now made two attempts to articulate cognizable PPPA claims. Even with the benefit of The Times's first motion to dismiss, they have still failed

to do so.  Having presumably put forth their best allegations in support of PPPA

violations here, it is clear that Plaintiffs cannot cure their pleading deficiencies or

the fundamental defects with their claim.  *See Asset Mgmt. One LLC v. U.S. Bank*

*Nat. Ass'n*, 569 F. App'x 438, 443 (6th Cir. 2014) (dismissal with prejudice proper

where plaintiff "could prove no set of facts in support of its allegations that would

entitle it to relief" rendering amendment futile).  Accordingly, any attempt by

Plaintiffs to amend would be futile, and Plaintiffs' Complaint should be dismissed

with prejudice.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with

prejudice.  For judicial economy and efficiency, The Times respectfully requests that

this Court  decide this Motion to Dismiss on the merits prior to considering certifying

the posed question to the Michigan Supreme Court.

Date: July 26, 2022                    Respectfully submitted,

                                       /s/ *Kristen C. Rodriguez*
                                       DENTONS US LLP
                                       Natalie J. Spears
                                       Kristen C. Rodriguez
                                       Emily A. Golding
                                       233 S. Wacker Drive, Suite 5900
                                       Chicago, IL 60606-6404
                                       Tel: (312) 876-8000
                                       natalie.spears@dentons.com
                                       kristen.rodriguez@dentons.com
                                       emily.golding@dentons.com

CLARK HILL PLC
Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
151 South Old Woodward Avenue,
Suite 200
Birmingham, MI 48009
Tel: (248) 530-6336
pkupelian@clarkhill.com
cschley@clarkhill.com

*Counsel for Defendant,*
*The New York Times Company*

## <u>Certificate of Service</u>

I hereby certify that on July 26, 2022, a copy of the foregoing document was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ *Kristen C. Rodriguez*
Kristen Rodriguez