## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

JOHN NASHEL and TIM ROBINSON,　　　)
individually and on behalf of all others　)
similarly situated,　　　　　　　　　　)
　　　　　　　　　　　Plaintiffs,　　　)　Case No. 2:22-cv-10633-SJM-
　　　　　　　　　　　　　　　　　　)　DRG
　　　vs.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　Hon. Stephen J. Murphy III
THE NEW YORK TIMES COMPANY,　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　Defendant.　　　)

### DEFENDANT THE NEW YORK TIMES COMPANY'S
### MOTION TO CERTIFY QUESTION TO THE
### <u>MICHIGAN SUPREME COURT</u>

Defendant The New York Times Company ("The Times") respectfully moves under this Court's Local Rule 83.40 for certification of the following question to the Michigan Supreme Court:

Does the three-year statute of limitations provided for in M.C.L. § 600.5805(2) govern a plaintiff's claim for damages under Michigan's Preservation of Personal Privacy Act (M.C.L. § 445.1715 (1989))?

Pursuant to Local Rule 7.1(a), Defendant's counsel certifies that on July 25, 2022, they communicated in writing to Plaintiffs' counsel, explaining the nature of the relief sought in this Motion, and seeking concurrence in that relief. Plaintiffs' counsel stated that they would oppose this Motion.

Contemporaneously with this Motion, The Times is filing a Motion to Dismiss Plaintiffs' Amended Complaint. The Times respectfully requests that this Court issue a decision on the Motion to Dismiss prior to deciding this Motion to Certify. If the Court does not find that the Amended Complaint should be dismissed at this time based on the grounds set forth in the Motion to Dismiss, The Times respectfully requests that this Court certify the question presented to the Michigan Supreme Court and stay all other proceedings in this case pending review and resolution of the question by the Michigan Supreme Court.

Dated: July 26, 2022                    Respectfully submitted,

                                        /s/ *Kristen C. Rodriguez*
                                        DENTONS US LLP
                                        Natalie J. Spears
                                        Kristen C. Rodriguez
                                        Emily A. Golding
                                        233 S. Wacker Drive, Suite 5900
                                        Chicago, IL 60606-6404
                                        Tel: (312) 876-8000
                                        natalie.spears@dentons.com
                                        kristen.rodriguez@dentons.com
                                        emily.golding@dentons.com

                                        CLARK HILL PLC
                                        Peter B. Kupelian (P31812)
                                        Carol G. Schley (P51301)
                                        151 South Old Woodward Avenue,
                                        Suite 200
                                        Birmingham, MI 48009
                                        Tel: (248) 530-6336
                                        pkupelian@clarkhill.com

cschley@clarkhill.com

*Counsel for Defendant The New York Times Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

JOHN NASHEL and TIM ROBINSON,   )
individually and on behalf of all others   )
similarly situated,   )
                    Plaintiffs,   )  Case No. 2:22-cv-10633
   )
   vs.   )  Hon. Stephen J. Murphy III
   )
THE NEW YORK TIMES COMPANY,   )
   )
   )
                  Defendant.   )

## BRIEF IN SUPPORT OF DEFENDANT THE NEW YORK
## TIMES COMPANY'S MOTION TO CERTIFY QUESTION TO THE
## <u>MICHIGAN SUPREME COURT</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................ i

TABLE OF AUTHORITIES ......................................................... ii

ISSUE PRESENTED .................................................................. iv

STATEMENT OF CONTROLLING/MOST APPROPRIATE
AUTHORITY ............................................................................. v

INTRODUCTION ...................................................................... 1

BACKGROUND ........................................................................ 5

    A.    History Of The Michigan PPPA. ....................................... 5

    B.    PPPA Plaintiffs and Their Conflicting Positions on the
           Statute of Limitations. ........................................................ 7

ARGUMENT ............................................................................. 8

I.    The Standard for Certification. ............................................... 8

II.    This Court Should Grant Certification To The Michigan Supreme
      Court. .................................................................................... 10

    A.    The Certified Question Concerns an Issue of Unsettled State
           Law with Far-Reaching Consequences. ............................. 10

    B.    The Issue to be Certified Controls the Outcome of This and Numerous
           Other Cases. ....................................................................... 13

    C.    Certification Will Cause No Undue Delay or Prejudice to
           Plaintiffs. ........................................................................... 13

CONCLUSION ......................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFT Michigan v. Project Veritas*,
  No. CV 17-13292, 2020 WL 5761032 (E.D. Mich. Sept. 28, 2020)..........8, 9, 10

*Antioch Company Litigation Trust v. Morgan*,
  633 F. App'x 296 (6th Cir. 2015) ........................................................................9

*Boelter v. Hearst Communications, Inc.*,
  269 F. Supp. 3d 172 (S.D.N.Y. 2017) ...........................................................7, 11

*In re Certified Question from United States Court of Appeals for
  Ninth Circuit (Deacon v. Pandora Media, Inc.)*,
  885 N.W.2d 628 (Mich. 2016).............................................................................9

*In re Certified Questions From United States District Court, Western
  District of Michigan, Southern Division*,
  958 N.W.2d 1 (Mich. 2020)................................................................................10

*Coulter-Owens v. Time Inc.*,
  695 Fed. App'x 117 (6th Cir. 2017) ....................................................................6

*Dabish v. McMahon*,
  818 F. App'x 423 (6th Cir. 2020) ......................................................................11

*Edwards v. Hearst Communications, Inc.*,
  No. 15-cv-9279, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016) ...................10, 11

*Hall v. Farm Journal, Inc.*,
  No. 2:21-cv-11811, ECF 26 (Lawson, J.) (E.D. Mich. April 5,
  2022) ..................................................................................................................11

*Krassick v. Archaeological Institute of America*,
  No. 2:21-CV-180, 2022 WL 2071730 (W.D. Mich. June 9, 2022).............11, 12

*Lehman Brothers v. Schein*,
  416 U.S. 386 (1974)..............................................................................................9

*Markham et al. v. National Geographic Partners, LLC*,
    No. 1:19-cv-00232 (W.D. Mich.), ECF 26 (Dec. 17, 2019) ...............................7

*Pratt v. KSE Sportsman Media, Inc.*,
    No. 1:21-CV-11404, 2022 WL 469075 (Ludington, J.) (E.D. Mich.
    Feb. 15, 2022) .................................................................................................11, 12

*Rentola v. Dow Jones & Co., Inc.*,
    No. 4:20-cv-11589 (E.D. Mich.), ECF 12 ..........................................................7

*Southfield Education Association v. Board of Education of the
    Southfield Public Schs.*,
    319 F. Supp. 3d 898 (E.D. Mich. 2018) ..............................................................9

**Statutes**

MCL § 445.1711, *et seq.* ...............................................................1, 5, 6, 14

MCL § 600.5805 .....................................................................................*passim*

MCL § 600.5813 ...........................................................................................1, 7

S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 ..............................................6

**Other Authorities**

Eastern District of Michigan Local Rule 83.40 .......................................8

Michigan Court Rule 7.308.....................................................................8, 9

## ISSUE PRESENTED

Whether this Court should certify to the Michigan Supreme Court for review the following question: Does the three-year statute of limitations provided for in M.C.L. § 600.5805(2) govern a plaintiff's claim for damages under Michigan's Preservation of Personal Privacy Act (M.C.L. § 445.1715 (1989))?

**STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY**

The controlling authority for this Motion includes:

1. MCL § 600.5805(2).

2. *Garden City Osteopathic Hospital v. Hbe Corp.*, 55 F.3d 1126 (6th Cir. 1995).

3. *Green v. Lansing Automakers Federal Credit Union*, No. 342373, 2019 WL 3812108 (Mich. Ct. App. Aug. 13, 2019).

4. *Dabish v. McMahon*, 818 F. App'x 423 (6th Cir. 2020).

5. *Aslani v. Sparrow Health Systems*, No. 1:08-CV-298, 2009 WL 736654 (W.D. Mich. Mar. 12, 2009).

## INTRODUCTION

This case raises an important and recurring question of Michigan law regarding statutory interpretation—namely, what limitations period should be applied to claims brought under Michigan statutes that do not themselves specify an applicable limitations period?

The specific question here relates to the appropriate statute of limitations to be applied to a claim under Michigan's Preservation of Personal Privacy Act (the "PPPA"), M.C.L. § 1711, *et. seq*. (1989), which was amended July 31, 2016. Neither the pre-2016 version of the PPPA nor the current version contains an express limitations period. Plaintiffs assert that a six-year "catch-all" limitations period applies to *all* statutory claims that do not specify a limitations period under M.C.L. § 600.5813. Defendant contends that the three-year statute of limitations, set forth in M.C.L. § 600.5805(2), which governs claims alleging injury to a person, applies because a claim under the PPPA seeks redress for a personal injury, one that is grounded in the common law tort of invasion of privacy, which has a three-year limitations period.

There are at least 42 PPPA class actions that are pending in Michigan federal district courts (including this action) where this issue is dispositive of the claims alleged by plaintiffs in those actions. These are high-stakes cases based on the older version of the PPPA, which allowed statutory damages of $5,000 per subscriber.

The current version only allows for actual damages, which tend to be nominal at best in invasion of privacy cases. Thus, it is not surprising that plaintiffs' counsel have rushed to the courthouse to file as many cases as they could under the older version of the statute, and are now trying to expand the limitations period to transform their otherwise untimely claims for alleged wrongful conduct in 2016, into timely ones. The applicable statute of limitations is a crucial, dispositive question that has the potential to put all of these cases to bed immediately and spare companies across the country from litigating meritless claims.

Importantly, these PPPA claims are uniquely positioned to evade state court scrutiny. Michigan Court Rule 3.501(A)(5) does not permit plaintiffs to bring class actions for statutory damages in Michigan state court unless the statute explicitly authorizes a class, which the PPPA does not. Thus, Plaintiffs here and in all other PPPA class actions, must allege federal jurisdiction through the Class Action Fairness Act, 28 U.S.C. § 1332(d), to be heard in federal court. *See* Am. Compl. at ¶ 19. Given that PPPA lawsuits are typically brought as class actions, as a practical matter, this means that a Michigan state court is unlikely ever to be able to opine on the applicable limitations period for the PPPA unless the question is certified to the Michigan Supreme Court.

Moreover, because the denial of a PPPA defendant's motion to dismiss on limitations grounds is not immediately reviewable by the Sixth Circuit Court of

Appeals as a matter of right, the PPPA actions are also positioned to evade scrutiny from the Court of Appeals, given the intense settlement pressure created by the *in terrorem* effect of these class actions seeking, collectively, millions, if not billions, of dollars in statutory damages.

To date, several federal district courts outside of Michigan have applied  the three-year limitations applies in PPPA cases, and Plaintiffs' counsel in the past have even admitted that the three-year period applies. However, within Michigan, three federal district courts have wrongly held that the six-year catch-all statute of limitations applies to PPPA claims.  All of these courts have looked at the statute of limitations issue as one of unsettled law, and one in which they must use their best judgment to determine how Michigan's highest court would rule.  It is time for a definitive answer from that court.

Certification is clearly required for reasons of judicial economy and consistency of decision.  If the Michigan Supreme Court finds that the three-year limitations period applies, roughly 40 putative class actions pending in federal court would be dismissed.  Alternatively, if the Michigan Supreme Court does not answer the presented question in the affirmative, certification will still have preserved a significant amount of time and resources the district courts would otherwise spend in analyzing currently pending or to-be-filed motions to dismiss on the limitations issue.

Moreover, absent certification, defendants like The Times will be faced with incredible uncertainty, as their vulnerability to suit under the PPPA will depend entirely on the federal district judge to whom their case is assigned and whether they will correctly recognize that M.C.L. § 600.5805(2)'s three-year limitations period is applicable to PPPA plaintiffs' claims. Certification is appropriate because it will allow for the avoidance of conflicting rulings in Michigan federal courts.

To be sure, Plaintiffs cannot quarrel with the Michigan Supreme Court's deciding of an important issue of Michigan law that courts in this District admit is unsettled. This Court and others should not have to guess at what the Michigan Supreme Court might think, especially when the stakes are so high. Indeed, most of the currently pending PPPA actions in Michigan federal courts, with the potential award of $5,000 per subscriber because they are brought under the older version of the PPPA, present the possibility of business-ending judgments for the small- to mid-size publisher defendants that PPPA plaintiffs are now targeting with these suits. A definitive answer on the statute of limitations will promote economy and efficiency for the courts and the parties, so that time and significant resources are not wasted litigating these potentially time-barred cases.

Accordingly, The Times respectfully requests that the statute of limitations question presented be certified to the Michigan Supreme Court.

## BACKGROUND

### A.    History of The Michigan PPPA.

There can be no doubt that the PPPA was designed to prevent the tort of invasion of privacy. The Michigan state legislature passed the PPPA in 1988 to address concerns related it described as an "unwarranted invasion of privacy." *Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section, H.B. No. 5331, Jan. 20, 1989 (attached to Amended Complaint as Ex. E, ECF 16-6, PageID.765); *see also* 1988 Mich. Pub. Act No. 378 (PPPA is "[a]n act to *preserve personal privacy* with respect to the purchase, rental, or borrowing of certain materials; and to provide penalties and remedies for violation of this act") (emphasis added).

The PPPA was passed in the wake of a federal statute, the "Video Privacy Protection Act," which was enacted following the disclosure of Supreme Court nominee Judge Robert Bork's video rental choices in a newspaper. *See* Am. Compl. Ex. E, ECF 16-6 at PageID.765.  However, Michigan's law went further than the federal Act.  In addition to video rental records, its scope includes "books or other written materials," proscribing certain "disclosures" of records or information "concerning the purchase, lease, rental, or borrowing of those materials."  MCL § 445.1712 (1989).

The Michigan statute sat on the books largely uninvoked for nearly 30 years until plaintiffs' counsel started bringing a series of class actions against magazine publishers over "direct marketing" mailing practices.  The allure of class actions under the PPPA was a statutory damages provision that permitted an action for actual damages *or* $5,000 in statutory damages, whichever was greater.  MCL § 445.1715 (1989).  Not surprisingly, the prior PPPA class action suits (filed against publishers by the same Plaintiffs' lawyers as here) elected to pursue the statutory damages of $5,000 per subscriber in lieu of seeking actual damages, threatening *in terrorem* class action damages against an already struggling industry.

In the wake of potentially crippling class action lawsuits against companies in the publishing industry, the Michigan Legislature amended the PPPA in 2016 (the "2016 Amendment").[1]  Among other things, the 2016 Amendment expressly removed the provision for $5,000 statutory damages, and in its place, provided only for actual damages.  MCL § 445.1715(2).  The 2016 Amendment took effect July 31, 2016.  Thus, July 30, 2016 was the last day the $5,000 statutory damages provision was in place.[2]

---

[1] S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (codified at MCL § 445.1711, *et seq.*).

[2] The Sixth Circuit ruled that the 2016 Amendment applies only prospectively. *Coulter-Owens v. Time Inc.*, 695 Fed. App'x 117, 121 (6th Cir. 2017).

**B.    PPPA Plaintiffs and Their Conflicting Positions on the Statute of Limitations.**

Up and until 2019, many PPPA plaintiffs expressly conceded that a three-year statute of limitations applied to their PPPA claims.[3]   However, since under that limitations period the statutory damages spigot was effectively turned off after July 31, 2019, plaintiffs' counsel did an about-face, alleging in new lawsuits that it was Michigan's "catch all" six-year statute of limitations that applied to their claims.

Defendants like The Times have moved to dismiss actions filed after July 31, 2019, as barred by the three-year statute of limitations provided for by M.C.L. § 600.5805(2) on the basis that claims under the PPPA allege "injury to a person" similar to that of privacy tort claims.   However, Plaintiffs contend that M.C.L. § 600.58133's six-year statute of limitations applies to all statutory claims if the statute

---

[3] For example, in *Markham et al. v. National Geographic Partners, LLC*, plaintiffs' counsel argued that § 600.5805(2)'s three-year limitations period was tolled, without asserting that a six-year statute of limitations applied.   *See Markham et al. v. National Geographic Partners, LLC*, No. 1:19-cv-00232, (W.D. Mich.), ECF 26 (Dec. 17, 2019).   Similarly, in responding to a motion to dismiss on untimeliness grounds, plaintiffs' counsel unequivocally stated that "[c]laims under the [PPPA] are subject to a 'three year statute of limitations,'" and never invoked the six year limitations period.   *Rentola v. Dow Jones & Co., Inc*., No. 4:20-cv-11589 (E.D. Mich.), ECF 12 at PageID.196.   And in *Boelter v. Hearst*, the same plaintiffs' counsel as here again admitted that a three-year statute of limitations applied to the PPPA claims and, to avoid a time-bar, argued instead that the three-year limitations period should be tolled.   *See* Plaintiffs' Memorandum, 2017 WL 4838016, ECF 163 (section heading: "HEARST'S ARGUMENT THAT THERE IS NO BASIS TO TOLL THE <u>THREE-YEAR STATUTE OF LIMITATIONS</u> IS WRONG") (emphasis added).

does not specifically provide for a limitations period.  Most recently, concurrently

with this Motion, The Times moved to dismiss this action on limitations grounds.

## ARGUMENT

## I.    The Standard for Certification.

Like most states, Michigan authorizes federal courts to certify unsettled

questions of state law to its Supreme Court.  *See* Mich. Ct. R. 7.308(A)(2)(a); *see

also* E.D. Mich. LR 83.40.  Under this Court's local rules, "upon motion or after a

hearing ordered by the Judge *sua sponte,* the Judge may certify an issue for decision

to the Highest Court of the State whose law governs its disposition."  E.D. Mich. LR

83.40(a).

Pursuant to the Local Rules, "a court 'may certify an issue for decision to the

highest Court of the State whose law governs its disposition' when '(1) the issue

certified is an unsettled issue of State law, and (2) the issue certified will likely

control the outcome of the federal suit, and (3) certification of the issue will not

cause undue delay or prejudice.'"  *AFT Michigan v. Project Veritas*, No. CV 17-

13292, 2020 WL 5761032, at *2 (E.D. Mich. Sept. 28, 2020) (quoting E.D. Mich.

LR 83.40(a)).

The Michigan Court Rules likewise provide that "when a federal court . . .

considers a question that Michigan law may resolve and that is not controlled by

Michigan Supreme Court precedent, the court may on its own initiative or that of an

interested party certify the question to the Court." Mich. Ct. R. 7.308(A)(2)(a).  The

decision to certify lies "within the sound discretion of the district court." *Southfield*

*Educ. Assoc. v. Board of Educ. of the Southfield Public Schs.*, 319 F. Supp. 3d 898,

906 (E.D. Mich. 2018).

As the United States Supreme Court has stated, this procedure "save[s] time,

energy, and resources and helps build a cooperative judicial federalism."  *Lehman*

*Bros. v. Schein,* 416 U.S. 386, 391 (1974); *see, e.g., Antioch Co. Litig. Tr. v. Morgan*,

633 F. App'x 296, 302 (6th Cir. 2015) (certifying question of statute of limitations

tolling to the Ohio Supreme Court because it was one "of Ohio law that may be

determinative of the proceeding and for which there is no controlling precedent in

the decisions of [the Ohio] Supreme Court." [citations omitted]). And the Michigan

Supreme Court has previously accepted and answered a certified question regarding

the interpretation of the PPPA.  *See In re Certified Question from United States Ct.*

*of Appeals for Ninth Cir. (Deacon v. Pandora Media, Inc.)*, 885 N.W.2d 628 (Mich.

2016) (answering certified question from Ninth Circuit Court of Appeals as to

whether the plaintiff was a "customer" under the language of the PPPA).

This Court has held, "[s]ubmitting uncertain questions of state law to a state's

highest court 'acknowledges that court's status as the final arbiter on matters of state

law and avoids the potential for "friction-generating error" which exists whenever a

federal court construes a state law in the absence of any direction from the state

courts.'" *AFT Michigan*, 2020 WL 5761032, at \*2 (quoting *Planned Parenthood of Cincinnati Region v. Strickland*, 531 F.3d 406, 410 (6th Cir. 2008)); *see also In re Certified Questions From United States Dist. Ct. , W. Dist. of Michigan, S. Div.*, 958 N.W.2d 1 (Mich. 2020) (answering questions certified by the Western District of Michigan).

**II.   This Court Should Grant Certification To The Michigan Supreme Court.**

The question presented meets all the qualifications for certification to the Michigan Supreme Court: (1) it presents an issue of unsettled law with far-reaching consequences; (2) resolution of the question will allow for a dispositive judicial determination in the instant action and numerous other pending PPPA class actions; and (3) Plaintiffs will not be prejudiced by any delay involved in waiting for the Michigan Supreme Court to rule.

### A.   The Certified Question Concerns an Issue of Unsettled State Law with Far-Reaching Consequences.

This Court's Local Rules provide that a district court may grant certification to a state supreme court if the question concerns an issue of unsettled state law. While The Times believes controlling Michigan state law and Sixth Circuit law warrant the application of M.C.L. § 600.5805(2)'s three-year limitations period to Plaintiffs' PPPA claims, courts have disagreed on the applicable limitations period.

Federal courts outside of this District have applied § 600.5805(2) three-year limitations period to PPPA claims. *See Edwards v. Hearst Communications, Inc.*,

No. 15-cv-9279, 2016 WL 6651563, at *1 (S.D.N.Y. Nov. 9, 2016); *Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172, 187 (S.D.N.Y. 2017).  These decisions are consistent with a slew of federal and Michigan appellate cases applying the three-year limitations period in M.C.L. § 600.5805(2) to claims brought under statutes that did not themselves specify an applicable limitations period.  *See e.g., Dabish v. McMahon*, 818 F. App'x 423 (6th Cir. 2020) (applying three-year statute for personal injury was applicable to a claim under Michigan's ethnic intimidation statute, which itself does not specify an applicable limitations period).[4]

Notwithstanding these decisions, three federal district courts in Michigan have now agreed with PPPA plaintiffs on the statute of limitations issue.  *See Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-CV-11404, 2022 WL 469075 (Ludington, J.) (E.D. Mich. Feb. 15, 2022); *Hall v. Farm Journal, Inc.*, No. 2:21-cv-11811, ECF 26 (Lawson, J.) (E.D. Mich. April 5, 2022), slip op.; and *Krassick v. Archaeological Inst. of Am.*, No. 2:21-CV-180, 2022 WL 2071730, at *1 (W.D. Mich. June 9, 2022).

Not only do these Michigan decisions contradict established law, they are wrong.  They have relied on non-PPPA, non-privacy decisions that do not involve

---

[4] The Times fully incorporates by reference the arguments it makes in its concurrently-filed Motion to Dismiss concerning the applicable statute of limitations.  In particular, *see* The Times's Mot. to Dismiss Am. Compl., at 21.

claims that originate in common law or involve alleged injuries to a *person*, as here, making the question of the applicable limitations period all the more pressing.

At a minimum, every court has acknowledged that the issue of the applicable limitations period of a claim under the PPPA is unsettled, conceding that they have had to predict how the Michigan Supreme Court would rule on this point. *See Pratt*, 2022 WL 469075, at *3, 5 (noting the statute of limitations issue is one of "first impression" because "no controlling Michigan authority is directly on point."); *Krassick*, 2022 WL 2071730 ("Michigan courts have not decided which limitation period applies to the PPPA."). The time for federal courts to guess at what the Michigan Supreme Court might say on this issue is over. By certifying the issue, the Court can provide clarity now, not only for Plaintiffs and The Times, but for all judges and PPPA litigants.

This factor weighs heavily in favor of certification.

**B.    The Issue to Be Certified Controls the Outcome of This and Numerous Other Cases.**

This Court's Local Rules also instruct that district judges may certify a question to a state supreme court if the issue will control the outcome of the case.[5] Here, definitive guidance from the Michigan Supreme Court, if the three-year statute were applied, would result in the dismissal of the instant action on statute of limitations grounds.

Moreover, an affirmative answer to the proposed certified question would result in the immediate dismissal of at least 39 currently pending proposed class actions in this Michigan federal courts.  This would preserve judicial resources and ease the ever-increasing judicial strain in this District and in the Western District.

This factor also weighs heavily in favor of certification.

**C.    Certification Will Cause No Undue Delay or Prejudice to Plaintiffs.**

The final factor to be considered by this Court is whether certification will cause any undue delay or otherwise prejudice the party opposing certification. Plaintiffs here, by their own admission, have asserted their claims against The Times

---

[5] As set forth in The Times's cover motion, The Times has filed a Motion to Dismiss contemporaneously with this Motion that it believes should be prior to this Motion. If the Court does not find that the Amended Complaint should be dismissed at this time based on the grounds set forth in the Motion to Dismiss, this Court should certify the question to the Michigan Supreme Court, as it will clearly control the outcome of this case.

nearly six years after the complained-of conduct by The Times.  A short delay to gain clarification on a critical legal issue in this case will cause no more delay than has already been caused by Plaintiffs themselves.  This lawsuit is also still in its infancy, as are the majority of the other PPPA class actions.  Plaintiffs have just recently filed their Amended Complaint, and The Times is bringing this Motion before the parties incur the expenses of full-scale class and merits discovery and summary judgment briefing.

Nor is there any conceivable prejudice to Plaintiffs in seeking guidance from the Michigan Supreme Court on a question of unsettled Michigan law.  In fact, if the Michigan Supreme Court answers the posed question in the negative, Plaintiffs here, as well as plaintiffs in all other PPPA class actions, will no longer need to expend resources combatting motions to dismiss on this statute of limitations issue.  Far from prejudicing Plaintiffs, certification has the potential to benefit Plaintiffs.

This factor thus weighs in favor of certification.

## CONCLUSION

For the foregoing reasons, The Times respectfully requests certification of the following question to the Michigan Supreme Court: Does the three-year statute of limitations provided for in M.C.L. § 600.5805(2) govern a plaintiff's claim for damages under Michigan's Preservation of Personal Privacy Act (M.C.L. § 445.1715 (1989))?

Date: July 26, 2022                    Respectfully submitted,

                                       /s/ *Kristen C. Rodriguez*

                                       DENTONS US LLP
                                       Natalie J. Spears
                                       Kristen C. Rodriguez
                                       Emily A. Golding
                                       233 S. Wacker Drive, Suite 5900
                                       Chicago, IL 60606-6404
                                       Tel: (312) 876-8000
                                       natalie.spears@dentons.com
                                       kristen.rodriguez@dentons.com
                                       emily.golding@dentons.com

                                       Clark Hill PLC
                                       Peter B. Kupelian (P31812)
                                       Carol G. Schley (P51301)
                                       151 South Old Woodward Avenue,
                                       Suite 200
                                       Birmingham, MI 48009
                                       Tel: (248) 530-6336
                                       pkupelian@clarkhill.com
                                       cschley@clarkhill.com

                                       *Counsel for Defendant The New York Times
                                       Company*

## <u>Certificate of Service</u>

I hereby certify that on July 26, 2022, a copy of the foregoing document was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ *Kristen C. Rodriguez*
Kristen Rodriguez