# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JOHN NASHEL and TIM ROBINSON, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) Case No. 2:22-cv-10633 |
| v. | ) Hon. Stephen J. Murphy III ) |
| THE NEW YORK TIMES COMPANY, | ) ) ) |
| Defendant. | ) |

## REPLY BRIEF IN SUPPORT OF DEFENDANT THE NEW YORK TIMES COMPANY'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Natalie J. Spears
Kristen C. Rodriguez
Emily A. Golding
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL  60606
(312) 876-8000
natalie.spears@dentons.com
kristen.rodriguez@dentons.com
emily.golding@dentons.com

Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
CLARK HILL PLC
151 South Old Woodward Ave., Suite 200
Birmingham, MI  48009
(248) 530-6336
pkupelian@clarkhill.com
cschley@clarkhill.com

*Counsel for Defendant,*
*The New York Times Company*

Plaintiffs attempt to avoid dismissal of their First Amended Complaint ("FAC") by relying on boilerplate allegations that could apply to any publisher with subscribers in Michigan—namely, that a publisher disclosed "all" of its subscribers' personal information to a litany of third parties during the four months before the PPPA amendment.[1]  *See* ECF 25, at PageID.1450-53.  But if Plaintiffs truly believed these conclusory allegations stated a valid claim, they would not have amended their complaint to add purported factual support.  Only now, after The Times's Opening Brief explained the inadequacy of these new allegations, do Plaintiffs assert that their original allegations were "more than sufficient to state a claim." *Id.* at PageID.1451.  They are not, and Plaintiffs' random assortment of "examples" (*id.* at PageID.1456) from other time periods do not save the FAC.

Plaintiffs' arguments as to why their case should not be dismissed on statute of limitations grounds fare no better.  While a series of recent district court decisions have applied a six-year limitations period to PPPA claims, those decisions are based on a fundamental misreading of Sixth Circuit precedent.  Further, Plaintiffs admit that there are numerous cases that do not follow the purported "catch all" statute of limitations rule, including one from the Sixth Circuit itself.  To the extent any doubt

---

[1] Abbreviations have the meanings ascribed to them in The Times's Opening Papers.

remains about which limitations period applies, this unsettled and dispositive question should be certified to the Michigan Supreme Court.[2]

## ARGUMENT

**I.      Plaintiffs Fail To Plausibly Allege Any Unlawful Disclosures.**

Plaintiffs contend that they need not prove their claims at this stage. True enough. But the Court need not accept as true "conclusory allegations," "legal conclusions," or "unwarranted factual inferences." *Davis v. Hartford Life & Accident Ins. Co.*, 980 F.3d 541, 550 (6th Cir. 2020). Yet that is precisely what Plaintiffs ask this Court to do by simply accepting their *ipse dixit* allegation that The Times disclosed "all" its subscribers' data to various third parties during four months in 2016.[3] *See* ECF 16, at ¶ 2. Merely listing the names of various, well-known data brokers does not bolster their conclusory allegation. *Id.*; ECF 25, at PageID.1452.

Plaintiffs next contend that their allegations are similar to other cases that have survived dismissal. *See* ECF 25, at PageID.1450. But of the four PPPA cases they cite, three do not even consider whether the complaints pled sufficient allegations to

---

[2] The Times incorporates its arguments from its Motion to Certify (ECF 21) here.

[3] Plaintiffs attempt to enlarge the "relevant pre-July 31, 2016" period by 101 days through their Opposition, arguing that they should receive the benefit of "COVID tolling." Doc. 25 at PageID.1448. But Plaintiffs cannot amend their pleading through their Opposition. *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020). The Times contests Plaintiffs' argument, and will address it, if need be, at the appropriate juncture.

establish an actionable disclosure under the PPPA.[4] The remaining case, *Horton v. GameStop, Inc.*, relied on the mere existence of a third-party data card at the time the complaint was filed to find that the plaintiff had alleged an unlawful disclosure. 380 F. Supp. 3d 679, 682 (W.D. Mich. 2018).[5] Here, in contrast, Plaintiffs admit that the 2007 and 2008 data cards were no longer published after 2008—so these data cards cannot create a reasonable inference that The Times subscriber lists were sold in 2016. *See* ECF 16, at ¶ 6.

As at least one court subsequently held at the motion to dismiss stage, a data card published by a third party who markets or offers subscriber data for sale says nothing about the disclosure of PRI, let alone an unlawful disclosure. *See Wheaton v. Apple Inc.*, No. C 19-02883 WHA, 2019 WL 5536214, at *4 (N.D. Cal. Oct. 25, 2019). Likewise, here, to find that the data card screenshots in the FAC render Plaintiffs' claims plausible, this Court would have to assume that the information advertised includes PRI of Michigan *Times* subscribers and that such information came from The Times rather than independent consumer marketing surveys, internet

---

[4] *See Boelter v. Hearst Commc'ns*, 192 F. Supp. 3d 427, 452-54 (S.D.N.Y. 2016) (finding PPPA exception did not warrant dismissal); *Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 874 (E.D. Mich. 2017) (addressing standing and unjust enrichment claim); *Perlin v. Time, Inc.*, 237 F. Supp. 3d 623, 639-43 (E.D. Mich. 2017) (same).

[5] It is unclear whether the *Horton* court would still rule the same way today given that discovery in that case revealed the defendant had ***not*** disclosed data to the third party whose data card was included in the complaint, which shows the unreliability of these third-party data cards. *See* Exhibit 1, attached hereto, at PageID.346-47.

3

search capabilities, or other sources.[6]  But these assumptions amount to sheer speculation.

Plaintiffs attempt to distinguish *Wheaton* by arguing that the FAC contains additional allegations, but they do not cite a single such allegation.  *See* ECF 25, at PageID.1458.  In actuality, the core of the allegations are identical, as set forth in The Times's opening papers.  *See* ECF 20, at Page.ID 1287-89.  Moreover, contrary to Plaintiffs' arguments, the *Wheaton* decision did not turn on the type of media at issue.  *See* ECF 25, at PageID.1458.  Rather, the court scrutinized the allegations of unlawful disclosure and found they could not support a plausible PPPA claim.  2019 WL 5536214, at *4-5.  The same result should follow here.

Putting Plaintiffs' conclusory allegations aside, they are left with a handful of facts that simply cannot create a plausible inference that these Plaintiffs had their PRI disclosed during the very narrow window at issue.  For example, Plaintiffs argue that The Times's privacy policy is somehow an admission of disclosure.  *See* ECF 25, at PageID.1446-47, 1456.  But the policy, on its face, is simply a general disclaimer that does not support a plausible inference that *any* unlawful disclosure of these Plaintiffs' PRI occurred from March to July 2016.  *See* ECF 20, at PageID.1289.  Similarly, Plaintiffs argue that The Times continued to disclose

---

[6] Plaintiffs themselves allege that there are numerous sources from which data aggregators, brokers and others acquire information on consumers.  *See infra*, n. 7.

subscriber data through "through at least 2020" (ECF 25, at PageID.1455, n.4) to support the plausibility of disclosures during a handful of months in 2016. But the only factual allegation related to 2020 is the publication of a book that year mentioning Virginia Beach's use of a list of *Times* subscribers' e-mail addresses at some point in the past, and Plaintiffs concede that e-mail addresses are not at issue in this case. *See* ECF 16, at ¶ 11.

Finally, Plaintiffs argue that The Times ignored their "significant" allegation that Plaintiffs saw a "dramatic uptick" of junk mail during the relevant timeframe. ECF 25, at PageID.1457. But Plaintiffs do not allege that this purported uptick was causally related to The Times, nor can they do so given that Plaintiffs allege a myriad of other ways their information could have been disclosed that would lead to a deluge of junk mail.[7] Nor do Plaintiffs explain why there would be a sudden uptick in junk mail if, as alleged, there had been continuous disclosures for 14 years.[8] In essence, Plaintiffs want this Court to discard the *Iqbal* standard because, they contend, no

---

[7] *See* Doc. 16 at PageID.698-702 (alleging a vast "information marketplace" where "data aggregators purchase, trade, and collect massive databases of information about consumers" from "numerous offline and online sources").

[8] Plaintiffs also make the wildly inappropriate argument that this Court should infer wrongdoing because The Times moved to certify the statute of limitations question and did not affirmatively offer to provide a sworn declaration disputing the allegations, as Plaintiffs' counsel purportedly received in other cases. ECF 25, at PageID.1459, n.7. Other defendants' litigation strategies cannot transform Plaintiffs' deficient claims into plausible ones, and The Times has no responsibility to *disprove* the conclusory allegations in the FAC.

5

plaintiff could ever allege enough for a plausible allegation of disclosure. But that simply is not true,[9] and the Court is not at liberty to ignore *Iqbal*.

## II. Plaintiffs' Claims Are Time-Barred.

Plaintiffs contend that *Palmer Park Square, LLC v. Scottsdale Insurance Company*, 878 F.3d 530 (6th Cir. 2017), requires that the Court read a six-year limitations period into any statute that does not contain an express limitations period. But that is clearly wrong, as Plaintiffs admit when confronted with a later Sixth Circuit decision that affirmed a three-year limitations period in a case similar to the one at bar. *See* ECF 25, at PageID.1466-68. Three years after *Palmer Park*, the Sixth Circuit in *Dabish v. McMahon*, 818 F. App'x 423, 427 (6th Cir. 2020), applied Section 5805(2)'s three-year limitations period to an ethnic intimidation claim brought under a Michigan statute without its own limitations period. *See* ECF 25, at PageID.1467.

Plaintiffs attempt to distinguish *Dabish* and similar lower court cases by arguing that the statutes in these cases were rooted in the common law. *Id.* at PageID.1466-68. But even if they are correct, the PPPA, too, is rooted in the common law, as The Times argued in its opening papers. *See* ECF 20, at

---

[9] This issue frequently arises in the analogous data breach context, but plaintiffs have nevertheless been able to proceed by alleging specific injuries close in time to the breach. *See, e.g.*, *Remijas v. Neiman Marcus Group*, LLC, 794 F.3d 688 (7th Cir. 2015). Plaintiffs make no such specific allegations here.

6

PageID.1291-1294. Plaintiffs cite the decision in *Krassick v. Archaeological Inst. of Am.*, No. 2:21-CV-180, 2022 WL 2071730, at *1 (W.D. Mich. June 9, 2022), which construed the privacy right in the PPPA as akin the common law tort of invasion of privacy but distinguished it because at common law, there was no right to the privacy of one's reading materials. ECF 25, at PageID.1463. However, this reasoning is at odds with *Dabish*, which was based on an ethnic intimidation claim that clearly did not exist at common law. Judge Jarbou did not consider *Dabish*. But had she, she would have recognized a statutory claim need not be a "traditional tort" to be subject to a shorter limitations period. The *Dabish* court's application of the three-year limitations period lays bare the *Krassick* court's erroneous reasoning.

Nor do Plaintiffs address The Times's arguments that statutes addressing personal injury claims, such as the PPPA, should be subject to the shorter limitations period. *See* ECF 20, at PageID.1295-96.

## CONCLUSION

For the foregoing reasons and those set forth in The Times's opening papers, the FAC should be dismissed with prejudice.

Date: September 23, 2022    Respectfully submitted,

/s/ *Kristen C. Rodriguez*
DENTONS US LLP
*Counsel for Defendant*,
*The New York Times Company*

7

## **Certificate of Service**

I hereby certify that on September 23, 2022, a copy of the foregoing document was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ *Kristen C. Rodriguez*
Kristen C. Rodriguez